ORIGINAL

FILED
JUL 1 0 2007
U.S. COURT OF
FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

STATE AUTOMOBILE MUTUAL
INSURANCE COMPANY,

Plaintiff,

-v-

THE UNITED STATES

Defendant.

Case No. 07-516 C

Phillip G. Alber (P24806)
ALBER CRAFTON, PSC
Attorneys for Plaintiff
2301 West Big Beaver Road, Suite 300
Troy, MI 48098
(248) 822-6190
(248) 822-6191 – fax
palber@albercrafton.com

## COMPLAINT

NOW COMES Plaintiff, State Automobile Mutual Insurance Company, by and through its attorneys, Alber Crafton, PSC, and for its Complaint, states as follows:

1. Plaintiff, State Automobile Mutual Insurance Company ("State Auto"), is an Ohio Insurance Company.

2. This Court has jurisdiction pursuant to 28 U.S.C. §1491.

3. State Auto acted as the surety for Edge Construction Company ("Edge") with respect to its construction contract with the Defendant, The United States of America through the Department of Veteran's Affairs, with respect to the Grave Site Development-Phase I at the Great Lakes National Cemetery, Holly, Michigan Project No. 923M2001 (the "Project").

4. The Defendant terminated the Contract with Edge and made a claim on the Performance Bond issued by Plaintiff naming Edge as Principal.

ALBER CRAFTON, PLLC ATTORNEYS AT LAW 2301 West Big Beaver Road · Suite 300 · Troy, MI 48084 · Telephone: 248-822-6190 · Facsimile: 248-822-6191

ALBER CRAFTON, PLLC ATTORNEYS AT LAW 2301 West Big Beaver Road · Suite 300 · Troy, MI 48084 · Telephone: 248-822-6190 · Facsimile: 248-822-6191

5. Plaintiff and Defendant subsequently entered into a Tender Agreement with Release (the "Agreement") in March of 2006, a copy of which is attached as Exhibit A.

6. Pursuant to the Agreement, Plaintiff paid Defendant $5,849,795.20 and agreed to retain liability for Latent Defects as defined in the Agreement. (See Exhibit A).

7. The Defendant held retainage in the amount of $228,727.83 (the "Retainage"), which was to be released to State Auto no later than December 31, 2006 upon payment by State Auto for Latent Defects. (See Exhibit A at Paragraph 5).

8. On June 29, 2006, counsel for Plaintiff sent correspondence to counsel for Defendant agreeing to three alleged Latent Defects totaling $8,806.13, and suggesting that the Defendant pay the completing contractor directly for the Latent Defects and that the Defendant deduct such amount from the Retainage. (A copy of the June 29, 2006 correspondence is attached as Exhibit B).

9. The Defendant paid the completing contractor directly for the Latent Defects on which State Auto agreed in the June 29, 2006 correspondence, and deducted such amounts from the Retainage.

10. On February 15, 2007, counsel for State Auto sent additional correspondence to Defendant's attorney agreeing to one additional Latent Defect (for a total of four), with the total amount to be deducted from the Retainage being $11,137.65, and seeking the remittance of the remaining Retainage of $217,590.18. (A copy of the February 15, 2007 correspondence is attached as Exhibit C).

11. Under the express terms of the Agreement, payment from Defendant to State Auto was to be made by December 31, 2006.

ALBER CRAFTON, PLLC ATTORNEYS AT LAW 2301 West Big Beaver Road · Suite 300 · Troy, MI 48084 · Telephone: 248-822-6190 · Facsimile: 248-822-6191

12. Despite demand, Defendant has failed and refused to release the remaining Retainage.

13. Plaintiff has been damaged by Defendant's breach of the Agreement in the amount of $217,590.18, exclusive of interest.

WHEREFORE, Plaintiff, State Automobile Mutual Insurance Company, respectfully requests that this Honorable Court enter a Judgment in favor of Plaintiff and against Defendant, the United States, in the amount of $217,590.18. Plaintiff further requests that this Court award costs, sanctions, interest, attorney fees and any other relief that it deems just and appropriate.

**ALBER CRAFTON, PSC**

By: Phillip G. Alber /ecsh

Phillip G. Alber (P24802)
Attorneys for Plaintiff, State Auto
2301 West Big Beaver Road, Suite 300
Troy, MI 48084
(248) 822-6190

Date: July 3, 2007
F:\DOCS\8505\025\COMPLAIN\00065533.DOC

# TENDER AGREEMENT WITH RELEASE

THIS TENDER AGREEMENT WITH RELEASE ("Agreement") is made this ___day of March 2006, by and between State Automobile Mutual Insurance Company ("Surety") and United States of America, Department of Veterans Affairs ("Obligee").

RECITALS:

A. On September 1, 2004, Edge Construction Company ("Principal") was awarded a construction contract (the "Contract") with Obligee, pursuant to which it agreed to perform all of the work necessary for Gravesite Development-Phase I at the Great Lakes National Cemetery, Holly, Michigan, Project No. 923M2001 (the "Project"); and

B. In connection with the Contract, Principal and Surety executed and delivered to Obligee certain payment and performance bonds as required under 40 USC §270a-270e (the "Bonds"), which Bonds were in the full amount of Contract; and

C. By letter dated September 9, 2005 (the "Termination Letter"), Obligee formally terminated for default a portion of the Contract and made claim upon Surety against the performance bond to complete or cause to be completed the work on the Project that was terminated; and

D. Surety has prepared and distributed a Request For Quotation seeking qualified contractors to complete the work on the Project that was terminated, all in accordance with the original contract documents comprised of the specifications and drawings for Project No. 923CM2001, Great Lakes National Cemetery, Holly Township, Michigan Gravesite Development-Phase I, and attachments 1a and 1b of the Termination Letter ("Completion Work"), incorporated in full in this Tender Agreement by reference; and

E. Surety received a bid from Giannetti Contracting Corporation to perform the Completion Work and Giannetti Contracting Corporation is willing to under take such Completion Work and prosecute same so that the work on the Project will be substantially completed no later than December 31, 2006 permitting the Obligee to take beneficial occupancy

and use[1] of the Great Lakes National Cemetery for its intended purposes. The only items to be completed after December 31, 2006, will be 1) punch list items (minor, incidental items) which must be completed within a reasonable time after Obligee performs a final inspection, and 2) items that must be done in spring 2007 such as landscaping, irrigation adjustments, erosion corrections due to winter weather, adjusting grades due to settlement, and clean up, which must be completed by no later than May 30, 2007. Liquidated damages will begin on January 1, 2007, if Obligee does not take beneficial occupancy and use of the Great Lakes National Cemetery for its intended purposes. Giannetti's Activity Timeline for Great Lakes Cemetery-Holly Michigan (the "Schedule") is attached to this Agreement as Exhibit 1, and

F. Surety desires to tender Giannetti Contracting Corporation as the Completing Contractor to Obligee ("Completion Contractor") and arranged for Obligee to enter into a new contractual agreement ("Completion Contract") with the Completion Contractor under which Completing Contractor will complete all of the work to be performed under the Contract in accordance with the original contract documents comprised of the specifications and drawings for Project No. 923CM2001, Great Lakes National Cemetery, Holly Township, Michigan Gravesite Development-Phase I, and attachments 1a and 1b of the Termination Letter, will warrant all of the work previously performed and to be performed to complete said Contract, and will furnish to Obligee its own payment and performance bonds guaranteeing said performance for the total contract price of $9,795,000[2]; and

G. The unpaid contract balance held by Obligee, without regard to additional claims by Principal and/or Surety is $4,319,787.80, and Obligee is willing to commit a portion of this amount (the "Unpaid Contract Balance") to the completion of the Project, subject to the terms and conditions set forth below; and

---

[1] Examples which indicate that substantial completion has been accomplished include columbaria, when niche covers are installed as long as the niche covers have been received by the Completion Contracator from the Obligee to meet Completion Contractor's schedule, paving is complete to the extent that the public can have easy access to the niche from the road, and preplaced crypt internment sections have irrigation installed, final grades are set, turf and mulch is established and the cemetery staff can easily access the area using plywood of temporary gravel road to uncover the crypts, remove the lids, and place remains in the crypts.

[2] Completion Contractor's price does not include nor will Completion Contractor be responsible for any amounts owed by Edge Construction Company (Edge) to Edge's subcontractors on this Project. However, Completion Contractor's price does include and Completion Contractor will pay the earned but unpaid retention for the following Edge subcontractors: Oscar Larson, Semek/Wright, Romeo Mechanical, V.J. Esper, Koppenberg and Tom's Landscaping.

H. Surety has agreed to make payment to Obligee in the amount of $5,849,795.20 and retain liability for latent defects on work performed by the Principal as settlement of Obligee's claim against the performance bond furnished by Principal and Surety which amount shall be paid to Obligee upon the execution of this Release Agreement; and

I. Principal executed a General Indemnity Agreement in favor of Surety on July 14, 2003, which provided, in part, that certain rights of Principal are assigned to Surety and Surety is the lawful and appointed Attorney in Fact for Principal to exercise said rights, all of which is detailed in the General Indemnity Agreement attached to this Agreement as Exhibit 2, to which Obligee is not a party; and;

J. Obligee is willing to accept the tender proposal and cash settlement offer in accordance with the terms of this Agreement, as set forth below.

NOW, THEREFORE, IT IS HEREBY AGREED THAT:

1. The above Recitals are acknowledged and understood to be incorporated by reference and part of this Agreement as that set forth word for word herein.

2. In consideration of the payment by Surety to Obligee of the sum of $5,849,795.20, the receipt and sufficiency is hereby acknowledged, and except as otherwise contained in this Agreement, Obligee does hereby expressly RELEASE, ACQUIT and FOREVER DISCHARGE Surety and its successors, reinsurers and assigns of and from any and all claims, rights, demands and/or causes of action of whatsoever kind or nature which Obligee has or may ever claim to have, now or in the future, against Surety under and/or by reason of the default and termination of the Principal as described in the Termination Letter and attached to this Agreement as Exhibit 2, with the exception of latent defects, fraud, or any other matter not dischargeable under the law. .

3. Obligee shall enter into a Completion Contract with Completion Contractor for the completion of the Contract work on the Project in consideration of the amount of $9,795,000.00. The obligation to enter into such Completion Contract is subject to the Completion Contractor qualifying to perform the work, as required by statute, regulation and

otherwise, the execution by Completion Contractor and Obligee of the Completion Contract on Standard Form #1442, and the provision by Completion Contractor of a Performance Bond in favor of Obligee on Standard Form 25, and a Payment Bond on Standard Form 25A.

4. Completion Contractor agrees that it will diligently prosecute the work that was terminated under the Completion Contract in accordance with the original contract documents comprised of the specifications and drawings for Project No. 923CM2001, Great Lakes National Cemetery, Holly Township, Michigan Gravesite Development-Phase I, and attachments 1a and 1b of the Termination Letter to completion in accordance with the Schedule.

5. Obligee and Surety acknowledge and agree that the Unpaid Contract Balance includes Retainage in the amount of $374,583.00 and an Unearned Contract Balance of $3,945,204.80. Obligee will make available the Unearned Contract Balance for payment Completion Contractor which, when combined with the payment by Surety of $5,849,795.20, shall equal the contract price of the Completion Contractor. Obligee and Surety further acknowledge and agree the Retainage is subject to the claims by Obligee for Incidental Expenses in the amount of $145,855.17, incurred by Obligee as a result of the termination for default of Principal]. If the Surety objects to all or part of the Incidental Expenses it will attempt to reach a resolution regarding its objection with the Obligee. If the Surety and the Obligee are unable to reach a resolution regarding Obligee's objection, the Surety and Obligee will utilize the ADR procedures in accordance with VA Handbook 7433.3 Alternative Means of Dispute Resolution (ADR) Program for Acquisition. If ADR is unsuccessful, the Surety will have the right to submit a claim in accordance with Clause 52.233-1 Disputes. The balance of the Retainage being held for latent defects related to the Principal's work of not less than $228,727.83 shall be released to Surety no later than December 31, 2006, on condition that State Auto pays Completion Contractor for the correction of any Latent Defect discovered by Completion Contractor while performing work under the Completion Contract.

6. Surety acknowledges and agrees that the payment bond previously furnished for said Project shall continue to remain in full force and effect in accordance with its original tenor,

except that it is expressly agreed by and between Surety and Obligee that the scope and coverage of said payment bond shall be limited to and shall only apply to statutory claims for payment of subcontractors and suppliers of Principal for work covered under the payment bond that Surety supplied to Principal; and that said payment bond shall not apply to or cover the Completing Contractor or any of its subcontractors and suppliers for any work performed and/or materials delivered after the date hereof.

7. It is expressly understood and agreed that Surety shall remain liable for latent defects in the work on the Project performed before September 9, 2005 ("Latent Defect Liability") and for the performance by Principal of its obligations for Base Bid Item No.2. Surety's Latent Defect Liability shall be coextensive in all respects to the liability of Principal for latent defects under the Contract Documents, except that Surety's Latent Defect Liability and liability for any default of Principal in performing its obligations for Base Bid No. 2, shall in no event exceed the difference between the penal sum of the performance bond and the amount paid under this Agreement, or $2,841,204.80.

8. Principal, Surety, and Obligee retain and reserve the right to all claims against each other that they may have in relation to the Contract and this Tender Agreement

9. This Agreement is effective as of the date first written above.

10. In the event the completion of the terminated work is prevented by acts of God, acts of war or rebellion, labor disturbances, acts of Government or governmental officers or any cause beyond the control of Obligee, or Obligee determines that it will not proceed with having the terminated work completed, or the final cost of the terminated work is less than $9,795,000, then any portion of the contract price of the Completion Contractor that is not paid or expended by the Obligee in excess of $4,319,787.80 shall be returned to Surety.

11. This Agreement shall be binding upon the parties and their respective successors and assigns and may be executed in counterparts.

12. Surety agrees to pay the Completion Contractor for discovery, notice, and repair of any "latent defects" as that term is defined in Inquiry No. F5058-RFQ-1.

IN WITNESS THEREOF, WE PLACE OUR HANDS ON THE DATE INDICATED BELOW:

OBLIGEE

By:______________________

Contracting Officer

Dated:______________________

SURETY

By: [signature]

Its: Bond Claim Specialist

Dated: 3-16-06

COMPLETION CONTRACTOR

By:______________________

Its:______________________

Dated:______________________

Completion Contractor executes this Agreement as to the following terms only: Recitals E and F, and Paragraphs 3, 4 and 12. Completion Contractor's agreement to these terms lapses unless Completion Contractor receives a Notice to Proceed with the Completion Work from Obligee on or before March 20, 2006

C:\Documents and Settings\jef3650\Local Settings\Temporary Internet Files\OLK1\Tender Agreement - final final 3-15-06.doc

12. Surety agrees to pay the Completion Contractor for discovery, notice, and repair of any "latent defects" as that term is defined in Inquiry No. F5058-RFQ-1.

IN WITNESS THEREOF, WE PLACE OUR HANDS ON THE DATE INDICATED BELOW:

OBLIGEE

By:______________________

Contracting Officer

Dated:______________________

SURETY

By:______________________

Its:______________________

Dated:______________________

COMPLETION CONTRACTOR

By: [signature] Ricky GIANNETTI

Its: PRESIDENT

Dated: 3-16-06

Completion Contractor executes this Agreement as to the following terms only: Recitals E and F, and Paragraphs 3, 4 and 12. Completion Contractor's agreement to these terms lapses unless Completion Contractor receives a Notice to Proceed with the Completion Work from Obligee on or before March 20, 2006

F:\DOCS\8505\009\agree\00049752.DOC

ALBER
CRAFTON, PSC
ATTORNEYS AT LAW

2301 West Big Beaver Road
Suite 300
Troy, Michigan 48084
Telephone: (248) 822-6190
Facsimile: (248) 822-6191

**Phillip G. Alber**
palber@albercrafton.com

June 29, 2006

*VIA: EMAIL*
Charlma J. Quarles
Deputy Assistant General Counsel
Department of Veterans Affairs
810 Vermont Ave., NW
Washington, D.C. 20420

**RE: Principal: Edge Construction Company**
**Obligee: United States**
**Project: VA Memorial Cemetery, Contract No.: V786C-708-8a**
**Bond No.: 6909187**
**Our File No. 8505-009**

Dear Ms. Quarles:

Over the last several months the completion contractor, Giannetti Construction Company, has been working at the above-reference project to complete the Edge contract work. In its efforts, it has discovered a number of conditions, some of which are claimed to be Latent Defects.

You may recall that State Automobile Mutual Insurance Company ("State Auto") agreed to pay for the repair of Latent Defects in the work by Edge Construction Company. In that regard, State Auto has agreed that three conditions discovered by Giannetti are Latent Defects and have further agreed on the amounts it believes are appropriate compensation for the repair of these items. The amounts agreed to are the amounts claimed by Giannetti to do the work.

The item agreed to be Latent Defects by State Auto with the associated costs of repair are as follows:

| Claim No. | Description | Repair Costs |
|---|---|---|
| 4 | Hidden Construction Defects in Maintenance Office Building | $2,220.34 |
| 7 | Ridge Vent Repairs in Maintenance Office Building | $3,394.05 |
| 9 | Insulation in Maintenance Office Building | $3,191.74 |

You may further recall that the Tender Agreement with Release between the surety and the VA provided in Paragraph 5 that $228,727.83 is held as security to assure payment for Latent

Defects by State Auto.[1] This letter is to suggest that the VA execute an Additive Change Order in the amount of $8,806.13 in favor of Giannetti to cover the aggregate costs of repairing the Latent Defects referenced above. This amount should then be deducted from the retainage the government holds, thereby reducing the amount of collateral to assure payment for the repair of Latent Defects.

This method of payment to Giannetti is suggested as there is presently a contract between Giannetti and the VA and therefore a vehicle is in place to permit payment. No such vehicle exists between State Auto and Giannetti.

As you can imagine, Giannetti is anxious to obtain assurance that it will be paid for the required repair of Latent Defects. Accordingly, I would appreciate your response to this letter as soon as possible.

Very truly yours,
ALBER CRAFTON, PSC

*via: email*

Phillip G. Alber

PGA/jm

cc: Dana Ivey *(via: email)*
David Starkie *(via: email)*
Rick Davis *(via: email)*
Jim Jeffers *(via: email)*
Gerald Richter *(via: email)*

F:\DOCS\8505\009\letter\00053887.DOC

[1] This amount represents only a portion of $374,583 of retainage held by the government. The balance of the retainage is held to reimburse the VA for incidental expenses incurred as a result of the termination of default of Edge.

ALBER
CRAFTON, PSC
ATTORNEYS AT LAW

2301 West Big Beaver Road
Suite 300
Troy, Michigan 48084
Telephone: (248) 822-6190
Facsimile: (248) 822-6191

**Phillip G. Alber**
palber@albercrafton.com

February 15, 2007

*VIA: EMAIL*
Charlma J. Quarles
Deputy Assistant General Counsel
Department of Veterans Affairs
810 Vermont Ave., NW
Washington, D.C. 20420

**RE: Principal: Edge Construction Company**
**Obligee: United States**
**Project: VA Memorial Cemetery,**
**Contract No.: V786C-708-8a**
**Bond No.: 6909187**
**Our File No. 8505-009**

Dear Ms. Quarles:

This letter is intended to begin closing out the above-referenced project as it relates to my client, State Auto Insurance Company.

As you are aware, the Tender Agreement executed between our respective clients in March, 2006 provided that the Veteran's Administration would hold retainage in the amount of $374,583.00. Of this amount, "$228,727.83 shall be released to surety no later than December 31, 2006 on condition that State Auto pays Completion Contractor for the correction of any Latent Defect". The balance, $145,855.17 was "subject to the claims of obligee for Incidental Expenses".

This writer is aware of four Latent Defects discovered by the Completion Contractor while performing work under the Completion Contract. The Latent Defects and costs to remedy them are as follows:

| | LATENT DEFECT | COSTS |
|---|---|---|
| A. | Defects in maintenance office building | $2,220.34 |
| B. | Septic Tank problems | $2,331.26 |
| C. | Ridge vent repairs | $3,394.05 |
| D. | Missing insulation of exterior walls of Maintenance Office Building | $3,192.00 |
| | **TOTAL** | $11,137.65 |

When the Latent Defects were discovered, an arrangement was made for the VA to pay for repair of Latent Defects by execution of a Change Order in favor of the Completion Contractor. Assuming this occurred, it is appropriate for your client to deduct the referenced amount and immediately remit $217,590.18. Please arrange for this check to be prepared, payable to State Automobile Mutual Company and forward it to my attention.

As to the amount retained for incidental expenses, our consultant was working with David Starkie to obtain a complete understanding of the constituents of the "expenses" and backup documents which support them. I am enclosing a copy of a letter from Mr. Davis to Mr. Starkie dated June 19, 2006 which did not receive a response. A response is necessary in order for analysis of the "expenses" to occur and permit to State Auto to provide a responsive agreement, or disagreement.

Please arrange for Mr. Starkie or another representative of your client to obtain and forward the information requested in Mr. Davis' letter.

If there are any questions, please give me a call.

In the meantime, I look forward to receiving your client's check and the information requested by Mr. Davis.

Very truly yours,
ALBER CRAFTON, PSC

*via: email*

Phillip G. Alber

PGA/jm
Enclosure
cc: Rick Davis (*via: email)*
Jim Jeffers (*via: email)*

F:\DOCS\8505\009\letter\00061535.DOC